# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

UNITED STATES OF AMERICA,

                  Plaintiff,        :      Case No. 2:19-cr-088
                                                 Also Case No. 2:21-cv-4200

                                                 District Judge Edmund A. Sargus, Jr.
-  vs  -                                    Magistrate Judge Michael R. Merz

JOHN WILLIAM SHADE, III,

                  Defendant.      :

---

# REPORT AND RECOMMENDATION

---

This § 2255 case, brought *pro se* by Defendant John Williams Shade, III, is before the Court for decision on the merits.

Defendant filed his Motion to Vacate August 16, 2021(ECF No. 100). Upon referral to her, Magistrate Judge Kimberly Jolson ordered the United States to answer and Defendant's prior counsel to file an affidavit as necessary to respond to Defendant's allegations of ineffective assistance of trial counsel (ECF No. 104). Because prior counsel had not been served with that Order, Judge Jolson extended their time to respond (ECF No. 111). The Magistrate Judge reference was then transferred to the undersigned (ECF No. 112).

On December 7, 2021, Constance Gadell-Newton, Defendant's prior counsel, filed a Memorandum in Response to the Motion to Vacate (ECF No. 116). The United States filed its

1

answer on December 28, 2021 (ECF No. 118). The Court then notified Defendant of the deadline for filing his reply (ECF No. 120) and then twice extended that deadline on Defendant's Motion (ECF Nos. 122-124). The last of these extensions expired February 24, 2022. On February 28, 2022, without any further extension of time either sought or received, Defendant placed his Reply in the prison mail system (Reply, ECF No. 126, PageID 745). The Court may therefore properly ignore the Reply because it was filed out of time without permission. For the sake of completeness, however, this Report includes analysis of the arguments made in the Reply.

## Litigation History

Defendant was indicted April 4, 2019, and charged with possession of ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(2)(Indictment, ECF No. 14). Pursuant to a Plea Agreement Shade agreed to plead guilty to three counts in the Superseding Information: two counts of being a felon in possession of a firearm and one count of being a felon in possession of ammunition (ECF No. 36, 37). Shade actually pleaded guilty pursuant to the Plea Agreement on November 12, 2019 (Minutes, ECF No. 42).

A month later on December 13, 2019, attorneys Gadell-Newton and Fitrakis moved to withdraw because they had not been paid the agreed retainer (ECF No. 47). Admitting his breach of contract, Shade supported his counsels' Motion to Withdraw (ECF No. 51). Shade filed a financial affidavit demonstrating indigency and attorney Alan Pfeuffer was appointed as his counsel (Unnumbered docket entry January 8, 2020). On September 17, 2020, Shade was sentenced to twenty-four months imprisonment on each count with the sentences to run

2

concurrently (ECF No. 72). Judgment to that effect was entered September 23, 2020 (ECF No. 73). Shade did not appeal, but has since filed an unsuccessful Motion for Compassionate Release.

Shade filed his Motion to Vacate under 28 U.S.C. § 2255 on August 16, 2021 (ECF No. 100).

## Analysis

Shade pleads the following grounds for relief:

**Ground One:** Deprived of Sixth Amendment right to effective assistance of pre-trial counsel.

**Supporting Facts:** Mr Shade's pre-trial counsel's performance was constitutionally deficient when she failed to file a cognizable motion to suppress and then failed to pursue litigation of that motion. As a result, Mr Shade's guilty plea and appeal waiver were not made intelligently, knowingly and voluntarily.
**See Attached Affidavit of Facts**

**Ground Two:** Deprived of the 4th Amendment protection from illegal search and seizure.

**Supporting Facts:** Mr Shade was deprived of his right to be free from illegal search and seizure, when officers : 1 ) on January 22, 2019, seized his vehicle without a warrant or probable cause; 2) on January 23, 2019, searched his vehicle with an invalid warrant and seized items that fell far outside the scope of that warrant; 3) failed to maintain a secure evidence chain of custody; and 4) on March 22, 2019, executed a no-knock search warrant on his residence on March 22, 2019, in violation of 18 U. S.C. 3109.
**See Attached Affidavit of Facts*

**Ground Three:** Deprived of 1st & 13th Amendment protections due to Government's Free Speech retaliation.

3

> **Supporting Facts:** The United States Attorney's Office in the Southern District of Ohio and various unknown federal agents operating under the umbrella of the Joint Terrorism Task Force collaborated and endeavored to weaponize the American criminal justice system in a years-long effort to suppress the protected Free Speech activities of a free press in retaliation for Mr. Shade's opposing political ideologies.

> **Ground Four:** Deprived of Due Process due to plea induced by Government threats to prosecute 3rd parties.

> **Supporting Facts:** Mr. Shade was coerced into pleading guilty to charges that he was legally innocent of, through threats made by the AUSA and members of Department of Homeland Security's Joint Terrorism Task Force to undergo a campaign of harassment and prosecution of Mr. Shade's friends, family and fellow social equity supporters.

(Motion to Vacate, ECF No. 100, passim.) The Motion is supported by Shade's Affidavit and a Brief in Support. *Id.* at PageID 483-505.

The Government's Response to the Motion to Vacate, while conceding it was timely filed, argues his Grounds for Relief are not cognizable in habeas corpus, are barred by his guilty plea, or are procedurally defaulted by his failure to appeal.

**Procedural Default Defense**

The United States asserts Grounds Three and Four are procedurally defaulted and should therefore be dismissed (Response, ECF No. 118, PageID 632). In response, Shade asserts "[t]he bright-line requirement that a claim must first be raised at trial or on direct appeal generally only

applies to non-constitutional claims." (Reply, ECF No. 126, PageID 697). Shade cites no authority for this proposition and none is known to the Court.

A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Therefore, absent manifest injustice or special circumstances such as a change in the law, § 2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 6th ed., §41.7(e)(2011), *citing Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n.8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*, citing Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993); *Ray v. United States*, 721 F.3d 758, 761(6th Cir. 2013), *quoting Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) *citing United States v. Frady*, 456 U.S. 152, 167-68 (1982). Claims that could have been raised on direct appeal, but were not, will not be entertained via a motion under § 2255 unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claims previously; or (2) that he is "actually innocent" of the crime. *Ray, supra*, *citing Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal citations omitted). A defendant's failure to raise a claim on direct appeal typically bars the defendant from raising it during collateral review. *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). That rule applies for a defendant challenging the validity of his guilty plea. *Waucaush v. United States*, 380 F.3d 251, 254 (6th Cir. 2004).

Occasions for district courts to apply procedural default in § 2255 proceedings almost always involve Constitutional claims because, with few exceptions, those are the only claims which can be brought in § 2255 proceedings. To warrant relief under § 2255, a prisoner must demonstrate the

existence of an error of constitutional magnitude which had a substantial and injurious effect of influence on the guilty plea or the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2006), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

The rest of Shade's opposition to the procedural default defense (PageID 697-99) argues only about Sixth Amendment claims, but the United States did not assert a procedural default defense to Ground One.

**Ground One:  Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Shade claims he received ineffective assistance of trial counsel when his trial attorney failed to pursue two motions to suppress she had filed and failed to file a third such motion.

This claim is not subject to procedural default by Shade's failure to raise it on direct appeal. *Massaro v. United States*, 538 U.S. 500 (2003); *United States v. Neuhausser*, 241 F.3d 460 (6th Cir. 2001); *United States v. Fortson,* 194 F.3d 730, 736 (6th Cir. 1999).

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a

> defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland,* 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable."

*Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Shade's trial attorney has explained why she filed the two motions to suppress and did not file the third: the motions were foregone as a result of the plea negotiation process which achieved a number of important objectives of Mr. Shade. These included not filing a second superseding indictment which could have resulted in substantially more prison time, lifting of the no contact orders with respect to family and friends, and the return of other items of Mr. Shade's property.

In his untimely Reply, Shade argues the merits of his many Fourth Amendment claims at great length – thirty-nine single-spaced pages (ECF No. 126, PageID 701-39). As the Magistrate Judge has pointed out above, because the Reply was untimely filed, the Court should not consider it on the merits. But if it reaches the merits, the Court will have to deal with the Government's argument that Shade forfeited these Fourth Amendment claims by pleading guilty.

8

A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

A valid, unconditional guilty or no contest plea waives all "constitutional violations occurring prior to a plea of guilty once the defendant enters his plea," including a challenge to the evidence supporting a conviction and any pre-plea constitutional violations, unless expressly preserved in a plea agreement or at a plea hearing. *United States v. Lalonde*, 509 F.3d 750, 757 (6th Cir. 2007); *see also Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

A guilty or no contest plea renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt. *Menna v. New York,* 423 U.S. 61 (1975). "[A] voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *United States v. Corp*, 668 F.3d 379, 384 (6th Cir. 2012), citing *United States v. Martin*, 526 F.3d 926, 932 (2008), citing *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991). After entry of an unconditional guilty plea, the defendant may challenge only the court's jurisdiction and the voluntary and intelligent nature of the plea itself. *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012), citing *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997). A guilty plea constitutes a break in the chain of events leading up to it. *Tollett v. Henderson*, 411 U.S. 258 (1973). Federal habeas corpus review of claims raised by a petitioner who has entered a guilty plea is limited to "the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Tollett*, 411 U.S. at 266.

A guilty plea bars a defendant from raising in federal habeas corpus such claims as the defendant's right to trial and the right to test the state's case against him.  *McMann v. Richardson*, 397 U.S. 759 (1970); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

A voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked.  *Mabry v. Johnson*, 467 U.S. 504 (1984). "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."  *Bousley v. United States,* 523 U.S. 614 (1998), *citing Reed v. Farley*, 512 U.S. 339, 354 (1994).

Shade pleaded guilty as provided in the Plea Agreement.  He has never sought to withdraw that plea in this Court nor did he ever raise a claim on appeal that the plea was not knowing, intelligent, or voluntary.  Indeed, he did not appeal at all.  Shade pleaded guilty after he knew the facts that support his lengthy Fourth Amendment argument – both the content of the search warrants, the facts of the warrantless seizures, and the contents of the motions to suppress which he alleges are incorrect to the point of constituting deficient performance under *Strickland v. Washington,* 466 U.S. 668 (1984).  Knowing all that, he still pleaded guilty and thereby waived his right to complain of constitutional violations preceding the plea.  Note that this is not enforcement of a procedural default for failure to raise these Fourth Amendment claims, but enforcement of a waiver of known claims previously raised.

Note also that Shade's claim of ineffective assistance of trial counsel is flatly contradicted by the content of the Plea Agreement which reads at ¶ 14:

> **14. Defendant's Acknowledgment:** The Defendant acknowledges that he has read and understands this plea agreement; that he accepts this plea agreement knowingly and voluntarily and not as a result of any force, threats, or promises, other than the promises in this plea agreement; that he has conferred with his attorney regarding this plea agreement and the facts and circumstances of his case, including the applicable law and potential defenses, and that he is fully satisfied with the representation, advice, and other assistance of his attorney in this case.

(ECF No. 37, PageID 135). Again, immediately above his signature, the Plea Agreement reads "I have read this agreement and carefully reviewed every part of it with my attorneys. I understand it, I voluntarily agree to it, and l do not wish to change any part of it. I am completely satisfied with the representation of my attorneys." *Id.* at PageID 136. Again during the plea colloquy Shade swore that he was satisfied with counsel's advice and representation (Transcript of Plea Colloquy, ECF No. 117, PageID 611).

Where a district court has scrupulously followed the required procedure under Fed.R.Crim.P. 11, "the defendant is bound by his statements in response to that court's inquiry." *Baker v. United States,* 781 F.2d 85, 90 (6th Cir.1986), quoting *Moore v. Estelle,* 526 F.2d 690 (5th Cir.1976).. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations made in open court carry a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977).

Defendant's First Ground for Relief should therefore be denied.

**Ground Two: Violation of the Fourth Amendment**

In his Second Ground for Relief, Shade claims the Government violated his rights under the Fourth Amendment.

The Government correctly points out that Fourth Amendment claims are not cognizable in habeas corpus. *Stone v. Powell*, 428 U.S. 465 (1976). *Stone* applies to bar consideration of Fourth Amendment claims in § 2255 proceedings. *Ray v. United States,* 721 F.3d 758 (6th Cir. 2013).

Shade correctly points out that *Stone* does not bar consideration of a claim that the defense attorney provided ineffective assistance of trial counsel in litigating Fourth Amendment claims and the Court has considered that claim above. But *Stone* does bar consideration of stand-alone Fourth Amendment claims such as Shade's Second Ground for Relief.

Shade's Second Ground for Relief should be dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. § 2255.

**Ground Three: Deprived of 1st & 13th Amendment protections due to Government's Free Speech retaliation.**

In his Third Ground for Relief, Shade claims in very vague terms that the Government deprived him of his First and Thirteenth Amendment rights by retaliating against him. While the Court understands the relationship between free speech and the First Amendment, the relevance of the Thirteenth Amendment, which abolished chattel slavery, is completely opaque.

12

In his Motion to Vacate, Shade claims that appointment of counsel and an evidentiary hearing are necessary to explain this claim.  However, it is quite clear that Shade never raised such a claim on appeal because he took no appeal in this case.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  With the exception of ineffective assistance of trial counsel claims, the procedural default analysis of *Wainwright* and its progeny is fully applicable to § 2255 motions.  *United States v. Frady*, 456 U.S. 152 (1982); *Kaufman v. United States*, 394 U.S. 217 (1969); *Ratliff v. United States*, 999 F.2d 1023 (6th Cir. 1993).

The fact that Shade waived his right to appeal in the Plea Agreement is no adequate response.  Shade never attempted to withdraw his plea and never argued, either in this Court or in the Sixth Circuit that his waiver of appeal was invalid because his guilty plea was not knowing, intelligent, or voluntary.

Shade's Third Ground for Relief should be dismissed with prejudice as barred by his procedural default of not raising it on direct appeal.

**Ground Four: Deprived of Due Process due to plea induced by Government threats to prosecute 3rd parties.**

Ground Four is barred by Shade's procedural default in failing to raise it on direct appeal on the same analysis given above as to Ground Three.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends Shade's Motion to Vacate should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

March 23, 2022.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served on Defendant by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

14